**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AVEO PHARMACEUTICALS, INC.<br><br>*Plaintiff,*<br><br>v.<br><br>SOMERSET THERAPEUTICS, LLC,<br>SOMERSET PHARMA, LLC, SOMERSET<br>THERAPEUTICS PRIVATE LIMITED f/k/a<br>SOMERSET THERAPEUTICS LIMITED,<br>and ODIN PHARMACEUTICALS, LLC<br><br>*Defendant.* | Civil Action No. _____ |

## COMPLAINT

Plaintiff AVEO Pharmaceuticals, Inc. ("AVEO"), for its complaint against Somerset Therapeutics, LLC ("Somerset Therapeutics"), Somerset Pharma, LLC ("Somerset Pharma"), Somerset Therapeutics Private Limited, f/k/a Somerset Therapeutics Limited ("Somerset Limited"), and Odin Pharmaceuticals, LLC ("Odin Pharmaceuticals") (collectively, "Somerset" or "Defendants"), hereby alleges as follows:

## NATURE OF ACTION

1.      This is an action for infringement of United States Patent No. 11,504,365 ("the '365 Patent" or "the Patent-in-Suit") in relation to Somerset's Abbreviated New Drug Application ("ANDA") No. 220384 (the "Somerset ANDA"), which seeks approval from the U.S. Food & Drug Administration ("FDA") to make a generic version of AVEO's FOTIVDA® (tivozanib) product.

2.      AVEO also seeks a declaratory judgment under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that Somerset's commercial manufacture, use, offer for sale, sale, and/or importation into the United States of its ANDA No. 220384 would directly and indirectly infringe the '365 Patent.

## PARTIES

3.      Plaintiff AVEO is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at One Marina Park Drive, 12th Floor, Boston, Massachusetts 02210.  AVEO develops, manufactures, and markets pharmaceutical products in the United States.  AVEO is the owner of the '365 Patent.

4.      On information and belief, Defendant Somerset Therapeutics is a limited liability company organized under the laws of the State of Delaware, having a principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873.  On information and belief, Somerset Therapeutics has a registered agent for service of process, Incorp Services, Inc., located at 131 Continental Drive, Suite 301, Newark, Delaware 19713.  On information and belief, Somerset Therapeutics is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district.  On information and belief, Somerset Therapeutics holds any intellectual property rights and marketing authorizations for Somerset's drug products.

5.      On information and belief, Defendant Somerset Pharma is a limited liability company organized under the laws of the State of Delaware, having a principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873.  On information and belief, Somerset Pharma has a registered agent for service of process, Incorp Services, Inc., located at 131 Continental Drive, Suite 301, Newark, Delaware 19713.  On information and belief,

Somerset Pharma is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district. On information and belief, Somerset Pharma is a wholly owned subsidiary of Somerset Therapeutics.

6.      On information and belief, Defendant Somerset Limited is a corporation organized and existing under the laws of India, having corporate headquarters at 54/1, Budihal, Nelamangala, Bengaluru-562123, Karnataka, India. On information and belief, Somerset Limited is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district, directly and through its affiliates. On information and belief, Somerset Limited plays a crucial role in developing and manufacturing generic pharmaceuticals products for Somerset Therapeutics for the United States market.

7.      On information and belief, Defendant Odin Pharmaceuticals is a limited liability company organized under the laws of the State of Delaware, having a principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873. On information and belief, Odin has a registered agent for service of process, Incorp Services, Inc., located at 131 Continental Drive, Suite 301, Newark, Delaware 19713. On information and belief, Odin Pharmaceuticals is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market including in this judicial district. On information and belief, Odin Pharmaceuticals operates as a research and development facility that supports all research and development efforts undertaken by Somerset.

8.     On information and belief, Defendants hold themselves out as affiliated entities within the same corporate family for purposes of manufacturing, marketing, selling, and distributing generic drug products through the United States, including in this judicial district.

9.     On information and belief, Defendants acted in concert to prepare and submit ANDA No. 220384 to the FDA.

10.    On information and belief, upon FDA approval, Defendants will work in concert with one another to make, use, offer to sell, and/or sell the drug products that are the subject of ANDA No. 220384 throughout the United States, and/or import such drug products into the United States, including in this judicial district.

11.    On information and belief, Defendants will each derive significant financial benefit resulting from the FDA's approval of ANDA No. 220384 and subsequent marketing and use of Somerset's ANDA product throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

13.    This Court has personal jurisdiction over Somerset Therapeutics because, on information and belief, it is a Delaware limited liability company.  On information and belief, Somerset Therapeutics maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

14.    This Court has personal jurisdiction over Somerset Pharma because, on information and belief, it is a Delaware limited liability company.  On information and belief,

Somerset Pharma maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

15.    This Court has personal jurisdiction over Somerset Limited because, on information and belief, it maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware, directly and through its affiliates, and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

16.    Alternatively, this Court may also exercise jurisdiction over Somerset Limited pursuant to Fed. R. Civ. P. 4(k)(2) to the extent that Somerset Limited, as a foreign defendant, is not subject to personal jurisdiction in any state's court of general jurisdiction, based on Somerset Limited's contacts with the United States as a whole, including without limitation through the manufacture, importation, distribution, and sales of its pharmaceutical products throughout the United States, including in this judicial district.

17.    This Court has personal jurisdiction over Odin Pharmaceuticals because, on information and belief, it is a Delaware limited liability company.  On information and belief, Odin Pharmaceuticals maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

18.     Venue is proper in this district as to Somerset Therapeutics, pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Somerset Therapeutics is incorporated in the State of Delaware and thus resides in this judicial district.

19.     Venue is proper in this district as to Somerset Pharma, pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Somerset is incorporated in the State of Delaware and thus resides in this judicial district.

20.     Venue is proper as to Somerset Limited, pursuant to 28 U.S.C. § 1391(c)(3), because Somerset Limited is a foreign corporation not residing in any judicial district and may be sued in any judicial district that has personal jurisdiction, including this judicial district.

21.     Venue is proper in this district as to Odin Pharmaceuticals, pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Somerset is incorporated in the State of Delaware and thus resides in this judicial district.

## THE DRUG APPROVAL PROCESS

22.     A company seeking to market a new pharmaceutical drug in the United States must first obtain approval from the FDA, typically through the filing of a New Drug Application ("NDA").  *See* 21 U.S.C. § 355(a).  The sponsor of the NDA is required to submit to FDA information on all patents claiming the drug that is the subject of the NDA, or a method of using that drug, and FDA then lists the patent information in its publication, the *Approved Drug Products with Therapeutic Equivalence Evaluations*, which is referred to as the "Orange Book." *See* 21 U.S.C. § 355(b)(1) and (c)(2).

23.     Alternatively, a company seeking to market a generic version of a previously approved drug is not required to submit a full NDA.  Instead, it may file an Abbreviated New Drug Application ("ANDA").  *See* 21 U.S.C. § 355(j).  The generic drug approval process is

considered "abbreviated" because the generic manufacturer may piggyback on the innovator company's data and FDA's prior finding of safety and efficacy by demonstrating, among other things, that the generic product is bioequivalent to the previously approved drug (the "reference listed drug" or "branded drug").

24.    In conjunction with this "abbreviated" application process, Congress has put in place a process for resolving patent disputes relating to generic drugs, pursuant to which an ANDA filer must provide certifications addressing each of the patents listed in the Orange Book for the branded drug. *See* 21 U.S.C. § 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12). An ANDA filer may certify, for instance, that it believes a patent is invalid or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV); *see also* 21 C.F.R. § 314.94(a)(12)(i)(A)(4). This is known as a "Paragraph IV Certification."

25.    The filer of an ANDA with a Paragraph IV Certification must also provide notice to both the owner of the listed patents and the holder of the NDA for the referenced listed drug. This "Paragraph IV Notice" must include a detailed statement of the factual and legal bases for the applicant's belief that the challenged patent is invalid or not infringed by the proposed generic product. *See* 21 U.S.C. § 355(j)(2)(B); 21 C.F.R. § 314.95.

26.    If the patentee or NDA holder files a patent infringement action within 45 days of receiving a Paragraph IV Notice from an ANDA filer, final approval of the ANDA is subject to a litigation stay. *See* 21 U.S.C. § 355(j)(5)(B)(iii); 21 C.F.R. § 314.107(b)(3). When the NDA holder is awarded New Chemical Entity ("NCE") exclusivity, the litigation stay runs to the later of 30 months from receipt of the notice letter or seven-and-a-half years from the approval date of the NDA. 21 U.S.C. §§ 355(c)(3)(E)(ii), (j)(5)(F)(ii). The stay provides an innovator company

with the opportunity to resolve any patent dispute before the generic product enters the market. *See* 21 U.S.C. 355(j)(5)(B)(iii).

## FACTUAL BACKGROUND

### The Patent-in-Suit

27.    On November 22, 2022, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '365 Patent, entitled "Use of Tivozanib to Treat Subjects with Refractory Cancer," to AVEO as the assignee.  A true and correct copy of the '365 Patent is attached as Exhibit A.

28.    AVEO owns the '365 Patent and has all substantial rights in and to the '365 Patent, including the right to assert any claims for past, present, and future infringement of the '365 Patent.

29.    The claims of the '365 Patent are generally directed to methods of treating patients with refractory advanced renal cell carcinoma ("RCC") having previously received at least two anti-cancer therapies, at least one of which included a tyrosine kinase inhibitor ("TKI").

### FOTIVDA®

30.    AVEO is the holder of NDA 212904, including all supplements thereto, for FOTIVDA.

31.    On March 31, 2020, AVEO submitted NDA No. 212904, under Section 505(b)(1) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), seeking FDA approval for an oral tivozanib hydrochloride product for the treatment of patients with relapsed or refractory RCC. On March 10, 2021, the FDA approved NDA No. 212904.  NDA No. 212904 was also awarded NCE exclusivity, which expires March 10, 2026.

32.    AVEO timely submitted information regarding the '365 Patent for Listing in FDA's Orange Book with respect to FOTIVDA, for strengths EQ 0.89MG BASE (Product 001), and EQ 1.34MG Base (Product 002), pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2).  The FDA thereafter listed the '365 Patent in the Orange Book with respect to those products, pursuant to 21 C.F.R. § 314.53(e).

33.    AVEO timely submitted information regarding U.S. Patent No. 6,821,987 (the "'987 patent") in the Orange Book with respect to FOTIVDA, for strengths EQ 0.89MG BASE (Product 001), and EQ 1.34MG Base (Product 002), pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2).  The FDA thereafter listed the '987 Patent in the Orange Book with respect to those products, pursuant to 21 C.F.R. § 314.53(e).

34.    AVEO timely submitted information regarding U.S. Patent No. 7,166,722 (the "'722 patent") in the Orange Book with respect to FOTIVDA, for strengths EQ 0.89MG BASE (Product 001), and EQ 1.34MG Base (Product 002), pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2).  The FDA thereafter listed the '722 Patent in the Orange Book with respect to those products, pursuant to 21 C.F.R. § 314.53(e).

35.    The FDA-approved label for FOTIVDA, among other things, provides information and instructions for the safe and effective use of FOTIVDA by healthcare providers and patients.  A true and correct copy of the FOTIVDA label is attached as Exhibit B.

36.    The FOTIVDA label states that "FOTIVDA is indicated for the treatment of adult patients with relapsed or refractory advanced renal cell carcinoma (RCC) following two or more prior systemic therapies."  Ex. B § 1, Indications and Usage.

37.    According to the FOTIVDA label, the active ingredient in FOTIVDA is tivozanib hydrochloride.  *Id.* § 11, Description.

38.     Tivozanib hydrochloride is a tyrosine kinase inhibitor ("TKI") targeting specific proteins that tumors rely on to grow new blood vessels, namely vascular endothelial growth factor receptor ("VEGFR")-1, VEGFR-2, and VEGFR-3.  *See* Ex. B § 12.1, Mechanism of Action.  This growth of new blood vessels, known as angiogenesis, supplies tumors with the oxygen and nutrients they need to grow and spread.  *Id.*  By inhibiting angiogenesis, tivozanib acts to slow the growth of a tumor or cause it to shrink.  *Id.*  Tivozanib exhibits high selectively for these proteins, which means it interferes less with other cellular functions, and can reduce side effects compared to broader systemic treatments.

39.     Hepatic impairment refers to the reduction in liver function due to liver disease or damage.  It affects the liver's ability to metabolize drugs and can lead to increased bioavailability of orally administered drugs.  Among the patients with RCC who are treated with tivozanib hydrochloride are those who have hepatic impairment or develop hepatic impairment during the treatment cycle.

40.     The "recommended dosage of FOTIVDA is 1.34 mg taken orally once daily for 21 days on treatment followed by 7 days off treatment for a 28-day cycle."  Ex. B § 2.1, Recommended Dosing.  The label states that the "1.34 mg capsule contains 1.5 mg of tivozanib hydrochloride (equivalent to 1.34 mg tivozanib)."  *Id*. § 11, Description.

41.     The FOTIVDA label provides further instructions for "use in specific populations," including patients with moderate hepatic impairment.  Ex. B, Highlights of Prescribing Information.  Specifically, the FOTIVDA label instructs monitoring patients for hepatic impairment and making certain dose modifications for patients exhibiting moderate hepatic impairment.  *Id.* § 2.3 Dosage Modifications for Moderate Hepatic Impairment, § 8.7 Hepatic Impairment.  For such patients, the "recommended dosage of FOTIVDA [is a] 0.89 mg

capsule taken orally once daily for 21 days on treatment followed by 7 days off treatment for a

28-day cycle." *Id.* § 2.3.  The Dosage and Administration section from the Highlights of

Prescribing Information portion of the label also instructs healthcare providers and patients to

"reduce the dose to 0.89 mg" for patients with moderate hepatic impairment.  *Id.*, Highlights of

Prescribing Information.  The label states that the "0.89 mg capsule contains 1.0 mg of tivozanib

hydrochloride (equivalent to 0.89 mg tivozanib)." *Id.* § 11, Description.

        42.    The FOTIVDA label also provides that "the safety of FOTIVDA was evaluated in

TIVO-3, a randomized, open-label trial in 350 patients with relapsed or refractory advanced

RCC who received 2 or 3 prior systemic treatments *[see CLINICAL STUDIES (14)]*," and directs

the reader to the clinical studies section of the label.  Ex. B. § 6.1, Clinical Trial Experience.  The

clinical studies section states that the "efficacy of FOTIVDA was evaluated in TIVO-3

(NCT02627963), a randomized (1:1), open label, multicenter trial of FOTIVDA versus sorafenib

in patients with relapsed or refractory advanced RCC who received 2 or 3 prior systemic

treatments including at least one VEGFR kinase inhibitor other than sorafenib or tivozanib." *Id.*

§ 14 Clinical Studies.  Further, the FOTIVDA label, sets forth a summary of the patient

demographics for the clinical trial, stating that "[p]rior therapy included two KIs (45%), a KI

plus an immune checkpoint inhibitor (26%), and a KI plus another systemic agent (29%)." *Id.*

Thus, all patients in the TIVO-3 trial described in the FOTIVDA label received a TKI prior to

treatment with tivozanib as a monotherapy.  *See id.* § 6.1 Clinical Trial Experience and § 14

Clinical Studies.

        43.    The FOTIVDA label reports the efficacy results of the TIVO-3 clinical trial,

providing, among other things, that the median duration of progression free survival in patients

receiving FOTIVDA is 5.6 months.   Ex. B § 14, Table 4, Efficacy Results in TIVO-3 (ITT).

**Somerset's Infringing Tivozanib Hydrochloride Products**

44.     On information and belief, on or before March 26, 2025, Somerset Therapeutics, with the aid of Somerset Pharma, Somerset Limited, and Odin Pharmaceuticals, submitted ANDA No. 220384 pursuant to 21 U.S.C. § 355(j), seeking FDA approval to engage in the commercial manufacture, importation, use, marketing, and sale of proposed generic tivozanib hydrochloride (eq. 1.34 mg and 0.89 mg base), referencing AVEO's FOTIVDA product as the reference listed drug (the "Proposed ANDA Product").

45.     Somerset sent AVEO a notice letter, dated March 26, 2025, stating that Somerset had submitted the Somerset ANDA seeking approval to manufacture, import, use, market, and/or sell the Proposed ANDA Product prior to the expiration of the '365 Patent (the "Paragraph IV Notice Letter").

46.     AVEO received the Notice Letter on March 27, 2025.

47.     The Paragraph IV Notice Letter asserts that the '365 Patent is invalid and not infringed by the Proposed ANDA Product but makes no such assertions with respect to the '987 and '722 patents.

48.     The Paragraph IV Notice Letter included an offer of confidential access to the Somerset ANDA pursuant to 21 U.S.C. § 355(j)(5)(C).  The offer only committed to provide unspecified portions of the ANDA and was subject to unreasonably restrictive confidentiality provisions.  Efforts to negotiate the terms of the offer of confidential access were unsuccessful.

49.     Somerset's submission of the Somerset ANDA to the FDA, including any amendments or supplements thereto, and any commercial manufacture or sale by Somerset of the Proposed ANDA Product, constitutes infringement of the '365 Patent, as detailed below.

50.     This action is being commenced before the expiration of forty-five days from the date AVEO received Somerset's Paragraph IV Notice Letter.

## COUNT I
## INFRINGEMENT OF THE '365 PATENT

51.     AVEO incorporates each of the preceding paragraphs as if fully set forth herein.

52.     The submission of the Somerset ANDA to the FDA, including the Paragraph IV Certification submitted therewith, which seeks approval to engage in the commercial manufacture, use, marketing, offer for sale, sale, and/or importation of the Proposed ANDA Product prior to the expiration of the '365 Patent, constitutes infringement by Somerset of the '365 Patent under 35 U.S.C. § 271(e)(2)(A).

53.     The commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product by Somerset before the expiration of the '365 Patent would instruct, direct, recommend, encourage, and/or promote direct infringement, contributory infringement, and/or active inducement of infringement of the '365 Patent under 35 U.S.C. §§ 271(a)-(c).

54.     On information and belief, and subject to AVEO's ongoing investigation and discovery efforts, if Somerset's Proposed ANDA Product is approved, Somerset will make, offer for sale, sell, or import Somerset's ANDA Product in a manner that, when used in accordance with its proposed labeling would infringe at least, by way of example, independent claims 1 and 7 of the '365 Patent, which recite as follows:

> 1. A method of treating a human subject with refractory advanced renal cell carcinoma (RCC) having previously received at least two anti-cancer therapies, at least one of which included a tyrosine kinase inhibitor (TKI), the method comprising:
>
>     administering to the subject treatment cycles consisting essentially of:

orally administering a pharmaceutical composition comprising an active agent consisting essentially of 1.5 mg tivozanib hydrochloride daily for 21 days followed by 7 days without administration of tivozanib hydrochloride until the subject experiences moderate hepatic impairment, upon which the amount of tivozanib hydrochloride in each treatment cycle is reduced from 1.5 mg to 1.0 mg,

thereby to achieve a progression free survival in the subject of at least 5 months.

7. A method of treating a human subject with refractory advanced renal cell carcinoma (RCC) having previously received at least two anti-cancer therapies, at least one of which included a tyrosine kinase inhibitor (TKI), and experiencing moderate hepatic impairment, the method comprising:

administering to the subject one or more treatment cycles consisting essentially of:

orally administering a pharmaceutical composition comprising an active agent consisting essentially of 1.0 mg tivozanib hydrochloride daily for 21 days followed by 7 days without administration of tivozanib hydrochloride

thereby to treat RCC.

55.     On information and belief, Somerset's Proposed ANDA Product will substantively copy the FOTIVDA label.  *See* 21 C.F.R. § 314.94(a)(8)(iv).  Accordingly, on information and belief and subject to AVEO's ongoing investigation and discovery efforts, by virtue of Somerset's submission of the proposed product label and other conduct, Somerset proposes to instruct, direct, recommend, encourage, and/or promote direct infringement of at least claims 1 and 7 of the '365 Patent by patients, physicians, prescribers or other healthcare providers.

56.     Somerset's Proposed ANDA Product is indicated for the treatment of adult patients with relapsed or refractory advanced RCC following two or more prior systemic therapies.

57.     On information and belief, the label for Somerset's Proposed ANDA Product, including its indication for patients with refractory advanced RCC would actively direct, instruct,

recommend, encourage, and/or promote that physicians, prescribers, and/or patients administer tivozanib hydrochloride to patients with refractory advanced RCC.

58.    On information and belief, many patients with relapsed or refractory advanced RCC who have had two or more prior systemic therapies would have received at least one TKI prior to treatment with tivozanib hydrochloride.

59.    On information and belief, the label for Somerset's Proposed ANDA Product, including its description of the TIVO-3 study conducted on patients who all received a TKI prior to receiving tivozanib hydrochloride, would actively direct, instruct, recommend, encourage, and/or promote that physicians, prescribers, and/or patients administer tivozanib hydrochloride to patients with refractory advanced RCC who have had two or more prior systemic therapies including at least one TKI.

60.    The recommended dosage of Somerset's Proposed ANDA Product is 1.34 mg once daily 21 days on treatment followed by 7 days off treatment.  On information and belief, the 1.34 mg dosage form of Somerset's Proposed ANDA Product contains 1.5 mg of tivozanib hydrochloride.

61.    On information and belief, among the patients who are administered Somerset's Proposed ANDA Product according to the instructions in its label are those who will have moderate hepatic impairment at the onset of treatment or develop moderate hepatic impairment during treatment.

62.    Somerset's Proposed ANDA Product label includes instructions to reduce the dose of tivozanib for patients with moderate hepatic impairment.  On information and belief, based on these label instructions, physicians or healthcare providers will assess the patients' liver function for hepatic impairment before and during treatment.

15

63.    On information and belief, physicians or healthcare providers will consult and follow the instructions of Somerset's Proposed ANDA Product label and adjust the dose of tivozanib hydrochloride from 1.5 mg to 1.0 mg for patients with moderate hepatic impairment. On information and belief, the 0.89 mg dosage form of Somerset's Proposed ANDA Product contains 1.0 mg of tivozanib hydrochloride.  Accordingly, Somerset's Proposed ANDA Product label would actively direct, instruct, recommend, encourage, and/or promote, that physicians, prescribers, and/or patients reduce the dose of tivozanib hydrochloride from 1.5 mg to 1.0 mg for patients with moderate hepatic impairment.

64.    Somerset's Proposed ANDA Product label provides instructions and safety information regarding the use and administration of tivozanib as a monotherapy.  Accordingly, Somerset's Proposed ANDA Product label would actively direct, instruct, recommend, encourage, and/or promote that physicians, prescribers, and/or patients administer or take tivozanib hydrochloride as a monotherapy.

65.    Somerset's Proposed ANDA Product label reports the efficacy results of clinical trials involving the treatment of RCC patients with tivozanib, where the median duration of progression free survival in patients receiving tivozanib is 5.6 months.  Accordingly, Somerset's Proposed ANDA Product label would actively direct, instruct, recommend, encourage, and/or promote that physicians, prescribers, and/or patients administer or take tivozanib hydrochloride to achieve a progression free survival in the subject of at least 5 months.

66.    On information and belief, and subject to AVEO's ongoing investigation and discovery efforts, the manufacture, use (including as directed in Somerset's proposed labeling for Somerset's Proposed ANDA Product), offer for sale, sale, marketing, distribution, and/or

importation of Somerset's Proposed ANDA Product will satisfy each of the recited elements of the methods recited in at least claims 1 and 7, either literally or under the doctrine of equivalents.

67.    On information and belief, if the FDA were to approve the Somerset ANDA, Somerset's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of Somerset's Proposed ANDA Product, including administration of Somerset's Proposed ANDA Product according to the foregoing label instructions, would necessarily or inevitably cause patients, physicians, prescribers, or other healthcare providers to directly infringe at least claims 1 and 7.  Somerset would actively induce and contribute to such direct infringement.

68.    Somerset has knowledge of the claims of the '365 Patent.  Despite this knowledge, Somerset has continued to assert its intent to engage in the manufacture, use, offer for sale, sale, marketing (including marketing Somerset's Proposed ANDA Product as a generic substitute for FOTIVDA to be used and administered in the same manner as FOTIVDA), distribution, and/or importation of Somerset's Proposed ANDA Product with the proposed labeling to be included for the Proposed ANDA Product, immediately and imminently upon approval of ANDA No. 220384.  On information and belief, and subject to AVEO's ongoing investigation and discovery efforts, by engaging in the forgoing activities, Somerset specifically intends to infringe the '365 Patent.

69.    On information and belief, Somerset's specific intent to actively induce and/or contribute to infringement of at least claims 1 and 7 of the '365 Patent includes Somerset's decision to proceed with its plan to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Somerset's Proposed ANDA Product, despite being aware that the proposed labeling to be included for the Proposed ANDA Product instructs,

directs, recommends, encourages, and/or promotes direct infringement of at least claims 1 and 7 of the '365 Patent.

70.    On information and belief, and with full knowledge of the '365 Patent, Somerset intends to and will actively induce infringement of the '365 Patent when Somerset's Proposed ANDA is approved and will do so immediately and imminently upon approval.

71.    FOTIVDA and any corresponding generic tivozanib hydrochloride product is not a staple article of commerce and has no substantial approved uses that do not infringe at least claims 1 and 7 of the '365 Patent.  On information and belief, Somerset's Proposed ANDA product is not a staple article of commerce and has no substantial uses that do not infringe at least claims 1 and 7 of the '365 Patent.  Upon information and belief, and subject to AVEO's ongoing investigation and discovery efforts, Somerset, with full knowledge of the '365 Patent, knows that its Proposed ANDA Products are especially adapted for use in a manner that infringes the '365 Patent, are not a staple article of commerce, and have no substantial uses that do not infringe at least claims 1 and 7 of the '365 Patent.

72.    Any launch by Somerset of the Proposed ANDA Product before expiration of the '365 Patent would cause AVEO to suffer immediate and irreparable harm.

73.    Unless Somerset is enjoined from infringing the '365 Patent, actively inducing infringement of the '365 Patent, and contributing to the infringement of others of the '365 Patent, AVEO will suffer irreparable injury.  AVEO has no adequate remedy at law.

74.    Somerset's infringement of the '365 Patent is willful.

**COUNT II**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT OF THE '365 PATENT**

75.    AVEO incorporates each of the preceding paragraphs as if fully set forth herein.

76.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

77.    For the reasons explained in Count I above, if the FDA were to approve the Somerset ANDA, Somerset's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product would instruct, direct, recommend, encourage, and/or promote direct infringement, contributory infringement, and/or active inducement of infringement of at least, by way of example, claims 1 and 7 of the '365 Patent under 35 U.S.C. §§ 271(a)-(c).

78.    With full knowledge of the '365 Patent, Somerset submitted ANDA No. 220384 to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of Somerset's ANDA Product with its proposed labeling prior to expiration of the '365 Patent.

79.    Any launch by Somerset of the Proposed ANDA Product before expiration of the '365 Patent would cause AVEO to suffer immediate and irreparable harm.

80.    Somerset's infringement of the '365 Patent would be willful.

81.    A definite and concrete controversy exists between AVEO and Somerset as to whether Somerset's commercial manufacture, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product prior to the expiration of the '365 Patent would infringe the '365 Patent.   Accordingly, AVEO is entitled to a declaratory judgment that it would.

## PRAYER FOR RELIEF

WHEREFORE, AVEO respectfully requests the following relief:

A.     A judgment that Somerset has infringed the '365 Patent, and a declaration that Somerset's commercial manufacture, distribution, use, marketing, offer for sale, sale, and/or importation into the United States of the Proposed ANDA Product would infringe the '365 Patent;

B.     An order, pursuant to 35 U.S.C. § 271(e)(4)(A), that the effective date of any approval of the Somerset ANDA No. 220384 under § 505(j) of the Federal Food Drug, and Cosmetic Act, 21 U.S.C. § 355(j), shall not be earlier than the expiration of the '365 Patent;

C.     A permanent injunction, pursuant to 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283, restraining and enjoining Somerset, their respective officers, agents, servants and employees, and those persons in active concert or participation with any of them, from infringing the '365 Patent for the full term thereof;

D.     An order that damages or other monetary relief be awarded to AVEO if Somerset engages in the commercial manufacture, use, marketing, offer to sale, sale, and/or importation of the Proposed ANDA Product prior to the expiration of the '365 Patent for the full term thereof, and that such damages or monetary relief be trebled and awarded to AVEO with prejudgment interest;

E.     A declaration that this is an exceptional case and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

F.     Costs and expenses incurred by AVEO in this action; and

G.     Such other and further relief as the Court may deem just and proper.

Dated: May 7, 2025                              Respectfully submitted,

                                                FARNAN LLP

OF COUNSEL                                      /s/ Michael J. Farnan
                                                Brian E. Farnan (Bar No. 4089)
Martin J. Black (*pro hac vice forthcoming*)    Michael J. Farnan (Bar No. 5165)
Brian M. Goldberg (*pro hac vice forthcoming*)  919 North Market St., 12th Floor
DECHERT LLP                                     Wilmington, DE 19801
Cira Centre                                     Tel: 302-777-0300
2929 Arch Street                                Fax: 320-777-0301
Philadelphia, PA 19104-2808                     bfarnan@farnanlaw.com
Tel: (215) 994-4000                             mfarnan@farnanlaw.com
martin.black@dechert.com
brian.goldberg@dechert.com
                                                *Attorneys for Plaintiff AVEO*
                                                *Pharmaceuticals, Inc.*
Pejmon Pashai (*pro hac vice forthcoming*)
DECHERT LLP
1900 K Street, NW
Washington, D.C. 20006-1110
Tel: (202) 261-3300
pejmon.pashai@dechert.com

21